WILLIAM R. TAMAYO, SBN 084965 (CA)
JONATHAN T. PECK, SBN 12303 (VA)
MARCIA L. MITCHELL, SBN 18122 (WA)
U.S. EEOC
San Francisco District Office
350 The Embarcadero, Suite 500
San Francisco, CA  94105
Telephone No. (415) 625-5651
Fax No. (415) 625-5657
Marcia.Mitchell@eeoc.gov

Attorneys for Plaintiff

ROBERT L. WENZEL - SBN 97956
ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A Professional Corporation
17871 Park Plaza Drive, Suite 200
Cerritos, California 90703-8597
Telephone: (562) 653-3200 ~ (714) 826-5480
Facsimile: (562) 653-3333
RWenzel@aalrr.com

Attorney for Defendant

UNITED STATES DISTRICT COURT FOR

THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>CARL KARCHER ENTERPRISES, dba CARL'S JR. RESTAURANT,<br><br>Defendant | Case No.: 2:05-CV-01978 FCD PAN<br><br>**CONSENT DECREE** |

## I.    **INTRODUCTION**

1.    Plaintiff, US Equal Employment Opportunity Commission ("Commission" or "EEOC")

brought this lawsuit under Title VII of the Civil Rights Act of 1964 and Title I of the

Civil Rights Act of 1991, to correct alleged unlawful employment practices on the basis of racial harassment and retaliation and to make whole Ms. Michal Galloway (nee Harris) ("Galloway") and other similarly situated employees of the defendant, Carl Karcher Enterprises dba Carl's Jr. Restaurants (hereinafter "CKE" or the "Company"), allegedly aggrieved by the unlawful practices.  The Commission alleges that an employee of CKE, James Teteak ("Teteak"),  unlawfully subjected Galloway and others to a racially hostile work environment at one of CKE's restaurants.  The Commission further alleges that CKE retaliated against Galloway after she complained of such harassment.

2.   CKE denies these allegations and asserts that no unlawful harassment, discrimination, or retaliation took place at CKE.

3.   In the interest of resolving this matter and continuing and strengthening CKE's commitment to equal employment opportunity, and as a result of having engaged in comprehensive settlement negotiations, the Commission and CKE (hereinafter referred to as "the Parties") have agreed that this action should be finally resolved by entry of this Consent Decree.

## II.

## GENERAL PROVISIONS

1.   This Court has jurisdiction over the subject matter and the parties to this action.  This Court will retain jurisdiction over this Decree for all purposes until the expiration of the term of this Consent Decree.

2.   The entry of this Consent Decree will further the objectives of Title VII and will be in the best interest of the Parties, those for whom the EEOC seeks relief and the public.

3.   The Court has reviewed the terms of this Consent Decree in light of the pleadings, the record herein and the applicable law and now approves the Consent Decree in its entirety.

4.   This Consent Decree is final and binding upon the Parties, their successors and assigns.

5.   This Consent Decree shall not constitute an adjudication and/or finding on the merits of the case.  The existence of this Consent Decree shall not in any way constitute an

- 2

admission by CKE that it has violated Title VII, Title I or any other applicable laws.

6.     The parties agree that this Consent Decree resolves all claims arising out of EEOC Charge No. 376-2003-00073 and the complaint filed in this action, and constitutes a complete resolution of all claims against CKE of racial harassment by James Teteak and/or retaliation for complaining about the alleged harassment by Teteak that were made or could have been made by the Commission, Galloway and/or any other Eligible Claimants who take under this Consent Decree. This Consent Decree does not, however, resolve any future charges or charges that may be pending with the EEOC other than the charges specifically referenced in this paragraph and those that may be released by Galloway, the EEOC and/or Eligible Claimants pursuant to this Consent Decree.

7.     This Consent Decree in no way affects EEOC's right to process, in accordance with the EEOC's standard procedures, charges filed by individuals against CKE alleging violations of federal employment discrimination statutes, other than charges filed by Galloway and Eligible Claimants relating to claims against CKE of racial harassment by James Teteak arising during the period February 23, 2001 to October 10, 2002 and/or retaliation for complaining about the alleged harassment by James Teteak. Charges include those pending as of the effective date of this Consent Decree and filed in the future. Processing of charges includes the administrative investigation and conciliation and commencement of civil actions on the basis of such charges.

8.     This Consent Decree comprises the full and exclusive agreement of the parties with respect to the matters discussed herein. No waiver, modification or amendment of any provision of this Consent Decree shall be effective unless made in writing and approved by all the Parties to this Decree, except that any substantive change, modification or amendment of any provision of this Consent Decree shall require approval by the Court.

9.     The Parties shall bear their own attorneys fees and costs.

## III.

## SCOPE OF CONSENT DECREE

1.  The duration of the Consent Decree shall be two (2) years from the date of the entry of the Decree, provided that CKE has complied substantially with the terms of this Consent Decree. CKE will be deemed to have complied substantially if the Court has not made any findings or orders during the term of the Consent Decree that CKE has failed to comply with any term of this Consent Decree. During the two-year term of this Consent Decree, this Court shall retain jurisdiction over this matter and the Parties for the purpose of enforcing compliance with the Consent Decree, including issuing such orders as my be required to effectuate its purposes.

## IV.

## GENERAL INJUNCTIVE PROVISIONS

1.  Discriminatory Harassment. Consistent with Section 703 of Title VII, 42 U.S.C. §2000e-2, CKE and its officers, managers (including supervisory employees), successors and assigns, and all those in active concert or participation with them, hereby agree not to: (a) discriminate against persons on the basis of race in the terms and conditions of employment; (b) engage in or be a party to any action, policy or practice that is intended to or is known to them to have the effect of harassing or intimidating any employee on the basis of race; or (c) create, facilitate or permit the existence of a work environment hostile to African-American or other non-White employees. Notwithstanding the above, the Parties agree that the mere fact that a charge of racial discrimination and/or racial harassment has been filed with the EEOC during the term of this Consent Decree does not standing alone prove that CKE has failed to comply with the provisions of this section and/or of the Consent Decree nor does it have any effect on this Consent Decree. The EEOC bears the burden of proving that CKE failed to take all reasonable steps within its power to insure compliance with this Consent Decree in order to establish that

-4

CKE is liable of civil contempt for violating the terms of the decree.

2. <u>Non-Retaliation.</u>  CKE and its officers, managers (including supervisory employees), successors or assigns, and all those in active concert or participation with them, agree not to engage in, implement or permit any action, policy or practice with the purpose of retaliating against any current or former employee of CKE because he or she has in the past, or during the term of this Consent Decree: (a) opposed any practice of harassment or other discriminatory acts on the basis of race or color made unlawful under Title VII; (b) filed a Charge of Discrimination alleging any such practice; (c) testified or participated in any manner in any investigation (including, without limitation, any internal investigation undertaken by CKE), proceeding or hearing in connection with this case; (d) was identified as a possible witness in this action; (e) asserted any rights under this Consent Decree; or (f) sought and/or received any monetary or non-monetary relief in accordance with this Consent Decree.  Notwithstanding the above, the Parties agree that the mere fact that a charge of retaliation has been filed with the EEOC against CKE for retaliation during the term of this Consent Decree, does not standing alone prove that CKE has failed to comply with the provisions of this section and/or of the Consent Decree.  The EEOC bears the burden of proving that CKE failed to take all reasonable steps within its power to insure compliance with this Consent Decree in order to establish that CKE is liable of civil contempt for violating the terms of the decree.

**V.**

**<u>MONETARY RELIEF</u>**

1. <u>Total Settlement Sum.</u>  CKE agrees to pay the total sum of $255,000.00 (Two-Hundred Fifty-Five Thousand and No Cents) (hereinafter referred to as the "Total Settlement Sum") as damages, to be allocated to Michal Galloway and other Eligible Claimants (as defined below at section V(3)(B), if any, for their claims of alleged racial harassment by James Teteak and/or retaliation.  CKE agrees to pay the Total Settlement Sum in

accordance with the terms set forth below at sections V(2) and (3).

2.  <u>Michal Galloway.</u>

    A.    Michal Galloway shall be paid a satisfactory sum representing damages for lost wages and damages for physical injuries and/or physical illness and/or emotional distress.  The Parties agree that Galloway shall be paid a total of $105,000.00 (One Hundred-Five Thousand Dollars and No Cents).  The $105,000.00 amount is defined as the Galloway Initial Settlement Sum.  The Parties agree that $5000.00 (Five Thousand Dollars and No Cents) of the Galloway Initial Settlement Sum shall represent payment for lost wages and that payroll taxes shall be withheld from this amount.  The Parties also agree that $100,000.00 (One Hundred Thousand Dollars and No Cents) of the Galloway Initial Settlement Sum shall be payment for damages for physical injuries and/or physical illness and/or emotional distress.

    B.    The parties agree that Galloway may be entitled to recover additional money from the remaining $150,000.00 (one hundred and fifty thousand dollars) (the "Settlement Fund").  The EEOC shall determine the remaining amount, if any, to which Galloway is entitled pursuant to the claims procedures set forth below in section V(3).

    C.    CKE shall pay the Galloway Initial Settlement as follows:

        1)    Within ten (10) days of the entry of this Consent Decree, counsel for Michal Galloway, (The Law Offices of Michal D. Nkosi, P.O. Box 2582, Chester VA 23821 (hereafter "Nkosi"), Nkosi shall forward an original signed copy of the Release Form attached hereto as Exhibit A and the Internal Revenue Service Form W-9 attached hereto as Exhibit B to counsel for CKE executed by Nkosi and Galloway.  Nkosi shall forward copies of the executed forms to counsel for the EEOC.

        2)    Within ten (10) days of the receipt of the Release Form and W-9 forms

-6-

executed by Nkosi and Galloway, CKE shall issue a check to "The Law Offices of Michael D. Nkosi in Trust for Michal Galloway" in the amount of $5000.00 (Five Thousand Dollars and No Cents) less applicable payroll taxes and another check to "The Law Offices of Michael D. Nkosi in Trust for Michal Galloway in the amount of $100,000.00 (One Hundred Thousand Dollars and No Cents). CKE shall make the payments in the form of a business check, cashier's check or certified check. Within ten (10) days of the receipt of the executed Release and W-9 form, CKE shall mail the checks set forth above to Nkosi. Copies of these checks shall be sent to counsel for the EEOC.

3) The Parties agree that Nkosi is responsible for the distribution of the Galloway Initial Settlement Sum to Galloway. The failure of Nkosi to distribute these funds and/or any dispute between Galloway and Nkosi as to the amount distributed to Galloway shall have no effect on this Consent Decree.

4) CKE shall report the payment in the amount of $5000.00 (Five Thousand Dollars and No Cents), which represents payment for lost wages, by providing Nkosi with a copy of a W-2 form relating to such payment. CKE shall report the payment in the amount of $100,000.00 (One Hundred Thousand Dollars and No Cents) by issuance of an Internal Revenue Service Form 1099 in accordance with the information provided by Nkosi and Galloway on the Internal Revenue Service W-9 Form. Galloway's 1099 form shall be mailed to Nkosi.

3. Identified and Unidentified Claimants

A. Settlement Fund Amount. CKE agrees to pay the sum of $150,000.00 (One Hundred Fifty Thousand Dollars and No Cents) in damages ("Settlement Fund") to be distributed to all "Eligible Claimants" (as that term is defined in section

-7-

V(3)(B) below) all in accordance with the provisions of this Consent Decree.

B.    Eligible Claimants

1)    <u>Definition.</u>   The Settlement Fund shall be used to make payments to persons, including, Michal Galloway, who timely submit Claim Forms (such persons are hereinafter referred to as "Claimants") and who the Commission determines to be eligible to receive monetary relief in this lawsuit (such persons are hereinafter referred to as "Eligible Claimants.").

2)    <u>Eligibility Criterion.</u>   Eligible Claimants shall include only those claimants who satisfy each and all of the following criteria:

a.    The Claimant is one of the following:

i    An African-American individual employed by CKE at its Elk Grove-Florin Road Restaurant in Elk Grove, California (Restaurant Number 223) at any time between February 23, 2001 and October 10, 2002; or

ii    A Non-White individual employed by CKE at its Elk Grove - Florin Road Restaurant in Elk Grove, California (Restaurant Number 223) from February 23, 2001 to October 10, 2002 and signed a petition alleging that James Teteak engaged in racial harassment;

b.    The Claimant had a work schedule which overlapped at any time with the schedule of James Teteak;

c.    The Commission timely received a Claim Form from the Claimant, in accordance with the procedures set forth in this Consent Decree and in the Notice of Consent Decree ("Notice") and Claim Form. A copy of the Claim Form and Notice are attached hereto and incorporated herein by this reference as Exhibits C and D, respectively;

   d.   The Commission received credible evidence that the Claimant was subjected to racial harassment by James Teteak or retaliated against for opposing racial harassment by James Teteak during the period of February 23, 2001 to October 10, 2002; and

   e.   The Claimant has not previously signed a release which would cover the actions complained of by Claimant.

3)   <u>Factors Considered by the EEOC in Making Eligibility Determinations.</u> Acting it its discretion, the EEOC shall exclusively determine the eligibility of Claimants for relief under this Consent Decree. In determining such eligibility, the EEOC shall consider the following factors: (a) severity of any alleged harassment/retaliation; (b) duration of any alleged harassment/retaliation; (c) extent of alleged harm, and (d) whether, and, if so, the extent to which the Claimant complained to the EEOC and/or cooperated or participated in this litigation or the administrative investigation leading to this litigation prior to the date of entry of this Consent Decree. The EEOC may also consider whatever evidence the EEOC deems appropriate, including, but not limited to evidence received by the EEOC in its investigation of the charges of discrimination underlying this action and in connection with the claims process provided by this Consent Decree.

4)   <u>Decision on Amounts Allocated to Eligible Claimants.</u>   Acting in its discretion, the EEOC shall determine the portion of the Settlement Fund that will be allocated to each Eligible Claimant for damages for physical injuries and/or physical illness and/or emotional distress. The amounts allocated to each Eligible Claimant shall reflect the factors enumerated in paragraph V(3)(B)(3), above. This Consent Decree contemplates that there may be significant differences in awards to the Eligible Claimants.

- 9 -

C.      Procedures to Provide Notice

    1)      <u>Consent Decree Administrator.</u>  The Parties agree that the firm of Rust Consulting (the "Consent Decree Administrator") shall be responsible for the administration of sending notices and payments from the Settlement Fund.

    2)      <u>Notice to Potential Claimants.</u>

        a.      <u>Notice of Consent Decree by Consent Decree Administrator</u>

            i       Notice shall be provided to all individuals who satisfy the criteria set forth above at sections V(3)(B)(2)(a) and (b) (the "Potential Claimants").

            ii      No later than thirty (30) days after the entry of this Consent Decree, CKE shall provide the Consent Decree Administrator with a list of individuals who meet the criteria of a Potential Claimant (the "Claimant List").  The Claimant List shall state the name, social security number and last known home address for each individual on the Claimant List.  A copy of the Claimant List shall also be forwarded to the EEOC. The EEOC agrees that it will utilize the Claimant List only in conjunction with the administration of this Consent Decree and that it will disclose the information on the Claimant List only to persons who need the information for the purposes of administering this Consent Decree.

            iii     The Consent Decree Administrator shall follow the following steps to ensure that notice is provided to all Potential Claimants:

            (a) Within ten (10) days of the receipt by the Consent

Decree Administrator of the Claimant List from CKE, the Consent Decree Administrator shall perform a national change of address search using the National Change of Address Data Base for each Potential Claimant.

(b) Within seven (7) days of performing the national change of address search, the Consent Decree Administrator shall mail the Notice and Claim Form (Exhibits C and D) by first class United States mail postage prepaid to each address which it obtains as a result of the national change of address search.

c) If, after sending the Notice and Claim Form to the address(es) found as a result of the national change of address search, a Notice and Claim Form is returned as undeliverable, the Consent Decree Administrator shall perform a search through the Lexis/Nexis Social Security Credit Card Header Records Data Base to determine alternative and/or additional addresses for any Potential Claimant whose Claim Form was returned as undeliverable and send a copy of the Notice and Claim Form to any and all addresses of the Potential Claimant obtained through the Lexis/Nexis search not previously identified and used for mailing. The Lexis/Nexis search shall be conducted within seven (7) days of notice that the Notice and Claim Form were returned as undeliverable;

d) As to any Potential Claimant to whom the Consent Decree Administrator has not been able to deliver a Notice and Claim Form after conducting the Lexis/Nexis search

- 11

and sending the Notice and Claim Form to all alternative and/or additional addresses obtained through the Lexis/Nexis search, the Consent Decree Administrator shall send a Notice and Claim Form to the Potential Claimant at any and all previous addresses obtained for the Potential Claimant either from CKE's records, the national change of address search and/or the Lexis/Nexis search not previously identified and used for mailing.

(e)  If, after performing the steps outlined in paragraphs (a) through (d) above, the Consent Decree Administrator has not been able to deliver a Notice and Claim Form to any Potential Claimants, the Consent Decree Administrator will provide written notice to the EEOC informing the EEOC of the claimant's name and addresses to which the Consent Decree Administrator has attempted delivery.  The notice to the EEOC shall be sent no later than seven (7) days after the Consent Decree Administrator has learned that the steps in paragraphs (a) through (d) were unsuccessful.

iv    No later than twenty-one (21) days after the completion of all of the steps set forth above at section (V)(3)(C)(2)(iii) the Consent Decree Administrator shall provide counsel for CKE and the EEOC with a declaration setting forth all steps that it took to provide notice of this Consent Decree to all potential claimants and attesting to the completion of the notice process (except for any ongoing attempt to obtain valid mailing addresses and resending of any returned Notice and Claim forms) (the "Declaration of

- 12

Compliance"). The Declaration of Compliance shall be filed with the court by CKE's counsel within seven (7) days of receipt by CKE's counsel.

b.   <u>Notice by CKE.</u> CKE agrees to provide Notice to all Potential Claimants who are still employed by CKE by including a copy of the Notice and Claim Form (Exhibits C and D) in the paycheck which is issued immediately after CKE provides the Claimant List to the Consent Decree Administrator.

c.   <u>Sufficient Notice.</u> The parties agree that compliance with the procedures set forth in this section constitutes sufficient notice to Potential Claimants of this Consent Decree and satisfies the requirements of due process. Nothing else shall be required of the Consent Decree Administrator or CKE. The EEOC reserves the right to take additional steps to locate Potential Claimants after the Consent Decree Administrator has exhausted its efforts. Any additional steps which the EEOC wishes to take to locate Potential Claimants must be completed at least thirty (30) days prior to the last day that a Potential Claimant may make a claim under section V(3)(D). The Parties agree that the EEOC's additional steps may not include steps which the Consent Decree Administrator has already taken and further agree that any additional steps to locate Potential Claimants may include only one (1) publication in a newspaper.

D.   <u>Making a Claim.</u> All Potential Claimants who wish to participate in the distribution of the Settlement Fund must complete and return the Claim Form (in the form of Exhibit C attached to this Consent Decree) to the EEOC so that it is received by the EEOC or its designated agent(s) or postmarked no later than June

16, 2006.

E.    The EEOC's Determination of Eligibility and Computation of Claims.

1)    Determination of Eligibility.  Within sixty (60) days after the deadline for receipt by the EEOC of returned Claim Forms, the EEOC shall make its determinations as to claimant eligibility and determinations as to the gross (pre-tax) amount of monetary relief from the Settlement Fund that will be awarded to Eligible Claimants.

2)    Notification of Eligibility.  Within thirty (30) days after the EEOC's determination of eligibility and amounts under section (V)(3)(E)(1) above, the EEOC shall mail to each person from whom it has received a Claim Form the following information: (a) whether he or she has been designated as eligible to be awarded relief; (b) the determination as to the gross (pre-tax) amount of the monetary relief to which such person shall be entitled; and (c) notice of the opportunity to object to the EEOC's determination in accordance with the provisions of the Consent Decree.  The letter will also inform each Eligible Claimant that any monetary payments received from the Settlement Fund may be subject to mandatory federal, state and local income tax withholding.

3)    Objection Procedure.  Any objections to the EEOC's determination under section (V)(3)(E)(2) must be done as follows:

a.    Any Claimant whose Claim Form is timely received by the EEOC and who desires to object to an EEOC determination concerning eligibility or amount under section V(3)(E)(2) above, may do so by submitting to the EEOC within thirty (30) days after the date of mailing of the EEOC's determination, a written objection.  Any such written objection must state the basis for the objection and the specific reasons for such objection.

- 14

b.  Within two (2) weeks after receipt of such written objection, the EEOC shall review its determination as to eligibility for the objecting claimant and either deny the objection or modify its determination as to eligibility and/or amount.

c.  If the EEOC's modification of the eligibility or amount determination results in a change to the eligibility determination and/or amount determined of any other Eligible Claimant, the EEOC shall mail the modified determination to any and all affected Eligible Claimants.

d.  Any Eligible Claimant who receives a modified determination has the right to file an objection within thirty (30) days of the receipt of the modified determination.  The EEOC then has two (2) weeks from the date of receipt of the objection to either deny the objection or modify the determination.

e.  This process shall continue until no objections to the EEOC's determinations of eligibility and amount are received for a period of twenty-one (21) days.  If no objection is received to the EEOC's determinations for a period of twenty-one days after the determinations are sent, the determinations shall become the EEOC's final determination.

F.  <u>Notification of Final Distribution Amount.</u>  Once the EEOC's determination has become final, the EEOC shall mail to each Eligible Claimant a letter notifying the Eligible Claimant of the gross (pre-tax) amount of the payment to which such Eligible Claimant was finally determined to be entitled (hereinafter the "Final Gross Settlement Amount").  The EEOC shall also mail to each Eligible Claimant a copy of the Release Form attached hereto as Exhibit E and the Internal Revenue Service W-9 Form attached hereto as Exhibit B.  When each Eligible Claimant

returns the completed and executed Release and W-9 forms to the EEOC, the EEOC shall forward to CKE a copy of the executed Release and W-9 form and information as to the amount of the Final Gross Settlement Amount to be paid to the Eligible Claimant who provided the Release and the address to which the Eligible Claimant's check may be sent.

G.  Payment of Final Gross Settlement Amount.  Within fourteen (14) days after receiving the Release and W-9 forms executed by an Eligible Claimant and the information regarding the check to be provided to that Eligible Claimant, CKE shall mail a check drawn in the Final Gross Settlement amount to the Eligible Claimant from whom CKE received the Release and W-9 form at the address of the Eligible Claimant provided by the EEOC.

H.  Payment of Portion of Settlement Fund to Galloway.  In the event that as part of the claims process the EEOC determines that Galloway is entitled to additional compensation, the EEOC shall mail a Release Form and W-9 form, attached as Exhibits E and B, to Nkosi for execution and completion by Nkosi and Galloway. When the EEOC receives the Release and W-9 forms executed by Nkosi and Galloway, the EEOC shall forward a copy of the executed Release and W-9 to CKE, along with information as to the Final Gross Settlement Amount due to Galloway.  Within fourteen (14) days of receipt of CKE's receipt of the Release and W-9 executed and completed by Nkosi and Galloway, CKE shall mail a check drawn in the Final Gross Settlement Amount for Galloway to Nkosi.  The Parties agree that Nkosi is responsible for the distribution of the Final Gross Settlement Amount to Galloway.  The failure of Nkosi to distribute these funds and/or any dispute between Nkosi and Galloway as to the amount distributed to Galloway shall have no effect on this Consent Decree.

I.  Verification of Payment of Final Gross Settlement Amounts.  CKE shall send a copy of each check mailed pursuant to this section to the EEOC.  CKE shall also

notify the EEOC in writing of any check for the Final Gross Settlement Amount that is returned. The Consent Decree Administrator shall take the following steps to track those Eligible Claimants who did not receive the check for the Final Gross Settlement Amount:

1)      The Consent Decree Administrator shall do a national change of address search using the National Change of Address Data Base for each address to which CKE mailed any returned check and shall send the returned check to the address which it obtains from the national change of address search;

2)      If the check is returned as undeliverable again, the Consent Decree Administrator shall perform a search through the Lexis/Nexis Social Security Credit Card Header Records Data Base to determine alternative and/or additional addresses for any Eligible Claimant whose check was returned as undeliverable and attempt to deliver the check to any alternative and/or additional addresses obtained through the Lexis/Nexis search.

The Parties agree that if the Consent Decree Administrator has been unsuccessful in locating an Eligible Claimant to deliver a Final Gross Settlement Amount for a period of six (6) months from the date of issuance of the check, that the amount of the Final Gross Settlement Amount that could not be delivered shall be included in the unallocated amount that shall be distributed as set forth below in section V(3)(K).

J.      Reporting of Payment of Final Gross Settlement Amounts. CKE shall report each payment of a Final Gross Settlement Amount to an Eligible Claimant by issuance of an Internal Revenue Service Form 1099 to the Eligible Claimant in accordance

with the information provided by the Eligible Claimant on the Internal Revenue Service W-9 form.

K.  Allocation of Any Amounts Not Paid Out of Settlement Fund. If the Final Gross Settlement Amount cannot be delivered to an Eligible Claimant within six months of the Final Determination, any amount not paid to an Eligible Claimant shall be distributed to the following charitable organization: William K. Morgan Scholarship Fund.

4.  Costs Associated with Claimant Process.  All costs associated with the distribution of the Settlement Fund to Eligible Claimants shall be paid as follows:

A.  CKE shall be responsible for paying the reasonable costs associated with the Consent Decree Administrator and costs associated with the processing of checks to Eligible Claimants and required administrative agency filings (e.g. issuance of pertinent 1099s, etc.).  The Parties agree that the maximum amount of the costs CKE will be required to pay above and beyond the Total Settlement Amount is $10,000.00 (Ten Thousand Dollars and No Cents). If the $10,000.00 (ten thousand dollar) cap is reached prior to the completion of Consent Decree Administrators obligations under the claims process, the EEOC reserves the right to complete the process of locating the claimants or to pay the remaining cost for the administrator to complete the process.

B.  The EEOC agrees that should it decide under section V(3)(C)(2)(c) to take steps to provide notice to Potential Claimants in addition to those steps taken by the Consent Decree Administrator to provide notice to Potential Claimants as set forth in section V(3)(C)(2)(a)(iii), that the EEOC shall be responsible for all costs associated with taking those additional steps.

C.  The EEOC will be responsible for paying reasonable costs associated with the processing of claim forms pursuant to Section V(3)(B), (E) and (F), above.

# VI.

## SPECIFIC INJUNCTIVE RELIEF

1. <u>Zero Tolerance.</u> CKE affirms the following "Statement of Zero-Tolerance Policy and Equality Objectives":

> CKE is firmly committed to maintaining a zero-tolerance policy concerning discriminatory harassment and retaliation against individuals who report harassment in the company's workplace; to swiftly and firmly responding to any acts of harassment and retaliation of which the company becomes aware; to implementing a disciplinary system that is designed to strongly deter future acts of harassment or retaliation; and to actively monitoring its workplace in order to ensure tolerance, respect and dignity for all people.

This paragraph does not create any individual or common law causes of action or other rights that would not otherwise exist under statute.

2. <u>EEO and Harassment Policies.</u>

A. <u>Content of Policy.</u> CKE certifies that its harassment policies, contain all of the following and will continue to contain the following throughout the duration of this Decree: (i) definitions of discriminatory harassment, with specific reference to harassment based on race and color; (ii) examples to supplement the definitions of harassment based on race and color; (iii) appropriate discipline and/or corrective actions for incidents of discriminatory harassment; (iv) strong non-retaliation language with examples to supplement the definition of retaliation; (vi) language that complaints of harassment and/or retaliation will be accepted irrespective of whether they are made verbally or in writing; (vii) a timetable for commencing an investigation after a complaint is made or received and for appropriate remedial action, if necessary, to be taken upon conclusion of an

investigation; and (viii) language which indicates that, promptly upon the conclusion of the investigation of a complaint, CKE will communicate to the complaining party the results of the investigation and the remedial actions taken or proposed, if any.

B.   <u>Distribution of Policy.</u>  CKE shall effectively disseminate its EEO and harassment policies and procedures by:

    1)     Distributing copies of the policies to all current employees within District 22 within thirty (30) days of the entry of this Consent Decree; and

    2)     Giving a copy of the policies to and reviewing the policies with all new employees in District 22 upon the employees' hire.  District 22 includes Units 59, 199, 223, 251, 264, 351, 516, 557 and 567.

3.    <u>Complaint Procedure.</u>  CKE certifies that CKE's policy and procedure relating to complaints of harassment (the "Complaint Policy"), is designed to encourage employees to come forward with complaints about violations of its harassment policies.  The Parties further agree that CKE's Complaint Policy provides CKE's employees with convenient, confidential and reliable mechanisms for reporting incidents of harassment and retaliation.  The Parties also agree that CKE's Complaint Policy notifies employees that they can lodge a complaint with their immediate supervisor or the Director of Human Resources and provides the name and telephone number for the Director of Human Resources.  CKE shall ensure that contact information for the Director of Human Resources is also continuously posted in a prominent place at all of CKE's business locations in District 22 during the term of the Consent Decree.

4.    <u>Policies Designed To Promote Supervisor Accountability</u>

A.    <u>Communications of Potential Discipline for Engaging in Harassment.</u>  CKE agrees that it shall impose appropriate discipline up to an including termination, suspension without pay or demotion, upon any supervisor or manager who CKE determines has engaged in racial harassment or permits any such conduct to occur

in his or her work area or among employees under his or her supervision, or who retaliates against any person who complains or participates in any investigation or proceeding concerning such conduct.  CKE shall communicate this policy to all of its supervisors or managers in District 22.

B.  <u>Communication of Duty to Actively Monitor Worksite.</u>  CKE agrees that it shall continue to advise its managers and supervisors in District 22 of their duty to actively monitor their work areas and to ensure employees' compliance with CKE's anti-harassment policy, and to report any incidents and/or complaints of harassment and/or retaliation.

5.  <u>Posting Regarding Consent Decree.</u>  The Notice of the Consent Decree, attached hereto as Exhibit D, shall be, and remain, posted in a clearly visible location frequented by employees at each restaurant in CKE's District 22 during the term of this Consent Decree.

6.  <u>Training of Employees.</u>  CKE agrees that within ninety (90) days of the entry of this Consent Decree, under the direction of an outside consultant paid by CKE, CKE shall provide and require all current employees in CKE's Unit No. 223 and all current and new supervisors and managers working in District 22 to attend anti-harassment training.  The purpose of said training shall be to give participants a thorough understanding of harassment issues, particularly racial harassment, including but not limited to theories of liability under Title VII, sources of legal protection for racial harassment victims and the employer's obligation to take preventative, investigative and remedial action with respect to harassment complaints and to review company policies (including discipline policies) and practices related to racial harassment and retaliation.  The training shall be designed and conducted with specific reference to the anti-harassment policies of CKE by an outside consultant in conjunction with company personnel.  CKE agrees to allow the outside consultant to conduct the significant portions of all training programs.  The consultant shall be selected by CKE, subject to the approval by counsel for the EEOC,

which approval shall not be unreasonably withheld.  The consultant shall be a person or entity with established experience in matters of racial discrimination and the applicable laws and regulations.  Any change in consultants during the terms of this Consent Decree can be done only upon the joint approval of counsel for the EEOC and CKE, or, if a dispute arises, upon Order of the Court.

A.   <u>Training Logistics.</u>  The content, method of training and size of training classes is subject to the approval by the EEOC which approval shall not be unreasonably withheld and which shall take into consideration specific operational needs identified by CKE at the time its submits its description of the training to the EEOC.  CKE agrees to provide a description of each training program to counsel for the EEOC no later than thirty (30) days before the training programs are scheduled to be held.  The EEOC must voice any objection to the training within twenty (20) days of the scheduled training.

B.   <u>Acknowledgement of Training Attendance.</u>  All persons attending mandatory anti-harassment training pursuant to this Consent Decree shall sign an acknowledgement of their attendance at the training, the date thereof, and their position with the company.  The consultant shall retain the originals of these acknowledgements and provide CKE with a copy thereof.

**VII.**

**<u>EXPUNGEMENT OF RECORDS AND DISCLOSURE OF INFORMATION</u>**

**<u>REGARDING GALLOWAY'S AND ELIGIBLE CLAIMANT'S EMPLOYMENT</u>**

1.   CKE shall not disclose any information about or make references to any charges of discrimination or this lawsuit in responding to employment reference requests for information about Michal Galloway or any of the Eligible Claimants.  In response to a specific inquiry from a potential employer of Galloway or an Eligible Claimant, CKE agrees that it shall disclose only the dates of employment, position held and final rate of pay of Galloway and/or the Eligible Claimants.  Galloway and the Eligible Claimants

- 22 -

shall inform all potential employers seeking employment reference requests to direct their request to Esther Luna, Carl Karcher Enterprises, Inc.

2.    CKE shall expunge from Michal Galloway's personnel file any reference to her termination and her charge of discrimination against CKE and this lawsuit.

3.    CKE shall modify Michal Galloway's personnel file such that the reason for her separation from employment is officially reported as a resignation rather than a termination.

4.    CKE may report any information about Galloway and/or any Eligible Claimant as required to state or federal authorities.

5.    CKE may disclose information about Galloway and/or any Eligible Claimant if required to do so by a Court order.

6.    Within ten (10) days from the date of entry of this Consent Decree, CKE shall provide Michal Galloway with a letter which states her dates of employment and positions held. The original letter of reference shall be sent to Nkosi.

## VIII.

## REPORTS TO THE COMMISSION

1.    <u>Training Report.</u>  Within thirty (30) days of completion of the training required by section VI(6) of this Consent Decree, CKE will send the EEOC appropriate verification of its completion of harassment training.

2.    <u>Racial Harassment Complaint Reports.</u>  CKE agrees to file the following reports relating to complaints of racial harassment made in CKE's District 22.

    A.    <u>Initial Complaint Report.</u>  Ninety days after the entry of this Consent Decree, CKE will mail to counsel for the EEOC a report containing the following information and documentation (the "Initial Complaint Report"):

        1)    A summary of all racial harassment complaints made in CKE's District 22 since the entry of the Consent Decree. This summary shall contain a brief

- 23 -

description of the type of complaint and  a statement as to each as to the result of the investigation of such complaint.  This report will identify the complaints by number and will not set forth identifying information of CKE employees.

2)   A copy of all records, documents and other writings relevant to such complaints and investigations shall be maintained by CKE during the period of the Consent Decree.  Copies of the documents shall be made available to the Commission within ten (10) days following a written request from the Commission to CKE's counsel.  The EEOC recognizes that documents relating to these complaints may contain identifying information of CKE employees.  The EEOC agrees that it will not use this identifying information for any purpose other than the administration of this Consent Decree and that it shall not provide this identifying information to any person other than a person who needs this information to administer this Consent Decree.

B.   <u>Subsequent Complaint Reports.</u>  On the first day of January and June of each year during the duration of this Consent Decree, CKE will mail to counsel for the Commission a report containing the above documentation and information.

## IX.

## RETENTION OF JURISDICTION AND EXPIRATION OF CONSENT DECREE

1.   This Consent Decree shall terminate two years from the date of entry by the Court, unless the EEOC petitions this Court for an extension of the Decree because of noncompliance by CKE. If the EEOC asserts that CKE has not complied with the Consent Decree, the EEOC shall provide written notification of the alleged breach to CKE and will not petition the Court for enforcement sooner than thirty (30) days after providing written notification.  The thirty-day period following written notice shall be used by the parties for good faith efforts to resolve the issue.  If the EEOC petitions the Court and the Court

-24-

finds that CKE is not in substantial compliance with the terms of the Decree, the Court may extend this Consent Decree.  Any extension of this Consent Decree must be ordered by this Court prior to the expiration of the Consent Decree on its own terms.

2.     The parties agree that CKE is in substantial compliance with this Consent Decree as long as CKE has complied with the provisions set forth in this Consent Decree.  The Parties further agree that the mere fact that an employee has filed a charge with the EEOC alleging racial harassment or retaliation against CKE during the term of this Consent Decree is not proof standing alone that CKE has not complied with the terms of this Consent Decree. The EEOC bears the burden of proving that CKE failed to take all reasonable steps within its power to insure compliance with this Consent Decree in order to establish that CKE is liable of civil contempt for violating the terms of the decree.

///
///
///
///
///
///
///
///
///
///
///
///
///
///

3.       This Consent Decree shall expire by its own terms at the end of the two (2) years without further action by the Parties. Upon the expiration of the Consent Decree, the EEOC will dismiss this lawsuit with prejudice. Additionally, upon the expiration of this Consent Decree, the EEOC releases any and all claims against CKE arising out of or relating to this action and the underlying charge and/or claims of harassment by James Teteak and/or retaliation for complaining about harassment by Teteak.

Respectfully submitted.

JAMES L LEE
Deputy General Counsel

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
1801 L. Street, N.W.
Washington DC 20507

Dated: _12/6/05_

WILLIAM R. TAMAYO
Regional Attorney

Dated: _12/6/05_

JONATHAN T. PECK
Supervisory Trial Attorney

Dated: _12/6/05_

MARCIA L. MITCHELL
Senior Trial Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
San Francisco District Office
350 The Embarcadero, Suite 500
San Francisco, Ca 94105
Telephone: (415) 625-5651

Dated: _12/1/05_

CHARLES A. SEIGEL, III
Attorney for Defendant
CKE RESTAURANTS, INC.
6307 Carpinteria Avenue, Suite A
Carpinteria, Ca 93013-2901

- 26